## In re TRUSTEES SYSTEM DISCOUNT CO. OF CHICAGO. *

### METROPOLITAN LIFE INS. CO. v. WILSON.

Nos. 5717, 5724.

Circuit Court of Appeals, Seventh Circuit.

June 23, 1936.

Rehearing Denied July 21, 1936.

*Writ of certiorari denied 57 S. Ct. 191, 81 L. Ed. ──.

Mitchell D. Follansbee, Clyde E. Shorey, Robert W. Schupp, and Frederic Barth, all of Chicago, Ill., for appellant.

Samuel E. Hirsch, A. J. Schanfarber, and Carl S. Goodman, all of Chicago, Ill., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

Appellant attacks an order of the District Court which directed appellant, a mortgagee, to pay to appellee, permanent trustee in 77B (11 U.S.C.A. § 207) proceedings, the sum of $83,250, which had previously been paid by receivers appointed in an equity suit instituted one day before an involuntary petition in bankruptcy was filed.

The debtor is a corporation engaged in making small loans on securities, wages, etc. An equity suit in the Federal District Court, instituted by a creditor, resulted in the appointment of a receiver. It was followed a few days later by three separate involuntary bankruptcy proceedings being initiated against the debtor. The bankruptcy proceedings were consolidated, and two years later proceedings under section 77B of the Bankruptcy Act were instituted. Temporary and perma-

nent receivers were appointed in the equity suit. William Wilson was elected trustee in what we will call the old bankruptcy act proceedings and was also appointed temporary and later permanent trustee in the 77B proceedings.

The equity receivers immediately took and retained possession of the company's assets for some two years, not relinquishing it until the adjudication in bankruptcy and the appointment of a trustee under the old bankruptcy act proceedings. The orders in question were entered in such interim.

Debtor in 1929 executed a $1,500,000 note secured by trust deed to appellant. Payments of principal, for a certain initial period, were to be in installments of $37,500, payable semi-annually, March 1 and September 1. When these principal payments were about to come due, the equity receivers petitioned the District Court in equity for authority to pay $41,625 (6% of $1,387,500, the amount of principal unpaid). In consideration of such payment of interest and the payment of certain taxes, appellant agreed to extend the maturity of the presently due installments until September 1, 1945, the maturity of the mortgage. The mortgaged property is located at 201 North Wells Street, Chicago, and is a twenty-eight story office building. The second and third floors were leased by debtor to an affiliated corporation and the lease assigned as security to the mortgagee.

Appellee, as permanent trustee under section 77B, petitioned the bankruptcy court for an order against appellant to show cause why it should not pay to said trustee the $83,250 interest received in the equity suit. Appellant moved to dismiss the petition. The court referred the matter to a special master who heard evidence and filed a report sustaining the motion to dismiss. The District Court, however, accepting the facts as found by the master, ordered appellant to repay to the permanent trustee the sums in controversy, on the theory that the equity court had no jurisdiction to make the orders after the bankruptcy proceedings were instituted.

The sole issue is the validity of the order of the District Court which directed the repayment of moneys paid by the receivers pursuant to the order of the court in the equity suit. A chronological history of the proceedings is herewith set forth.

Nov. 26, 1929..Mortgage by debtor of $1,500,000 to appellant.

Oct. 28, 1932..Equity receivership suit begun against debtor. Krause appointed temporary equity receiver and given possession of the property.

Oct. 29, 1932..Involuntary petition in bankruptcy filed.

Oct. 31, 1932..Two other involuntary petitions in bankruptcy filed.

Dec. 16, 1932..Birney and Stewart appointed permanent equity receivers and took possession of property.

Nov. 17, 1932..Petition for receiver in bankruptcy and for consolidation and adjudication continued.

1933.

Feb. 20........Final account of temporary equity receiver approved.

Feb. 28........Equity receivers petitioned for authority to, and were ordered to, pay $41,625 interest in consideration for which mortgagee waived payment of $37,500 on principal.

May 13........Petitioning creditors granted permission to look at debtor's books in receivership and receivers ordered to furnish books to referee on request.

May 20........Three bankruptcy petitions consolidated and referred.

Aug. 29........Petition and order similar to that of February 28, 1933, $41,625 paid mortgagee.

Dec. 6.........Order that attorney for petitioning creditors be given notices in equity receivership.

Dec. 20........Referee Charles' final report on petitions for adjudication in bankruptcy.

1934.

Mar. 1........Default in payments of principal and interest on mortgage since this time.

Mar. 21.......Adjudication in old bankruptcy (shortly thereafter property turned over by receiver to trustee named in old bankruptcy).

June 16........Involuntary petition under 77B.

July 3.........Birney's sole receiver final report filed in equity.

Aug. 23........Petition under 77B approved.

Sept. 26.......Permanent trustee appointed under 77B (He had shortly theretofore been appointed temporary trustee).

1935.

Jan. 8.........Permanent trustee petitioned to recover interest payments.

The same judge named the receiver as named the trustee under the old bankruptcy proceedings and the trustee under 77B bankruptcy proceedings.

The same individual was named trustee under 77B as was named trustee under the old bankruptcy proceedings.

The petitioning creditors in 77B proceedings were *not* the same creditors as filed involuntary proceedings under the old act (11 U.S.C.A. § 1 et seq.).

In reaching its conclusion the District Court undoubtedly relied upon Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79

L.Ed. 599; Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870; Isaacs v. Hobbs Tie Co., 282 U.S. 734, 51 S. Ct. 270, 75 L.Ed. 645; In re Diamond's Estate (C.C.A.) 259 F. 70, and Toledo, St. L. & W. R. Co. v. Gordon, 143 F. 95 (C.C. A.7). The language which appears in these decisions might suggest a want of jurisdictional authority in the equity suit to enter any order of an administrative character after the petition for an adjudication in bankruptcy has been filed. There are, however, significant facts which distinguish the present case from those cited, and which, we think, necessitate a holding that limits, or recognizes exceptions to, the unqualified language of the Taylor opinion.

The distinguishing facts are: (a) The adjudication in bankruptcy *immediately* (by two days) followed the filing of the involuntary petition in bankruptcy in the Taylor Case. In the instant suit, the adjudication followed the filing of the petition by nearly *two years*. (b) In the instant suit the equity proceedings were continued in the hope that reorganization would take place and liquidation through bankruptcy proceedings be avoided. (c) The orders made in the equity suit were for the benefit of creditors who were aware of the application for the orders and offered no opposition. (d) The orders in the instant suit were made upon the condition that the first mortgagee waive its right to insist upon default for nonpayment of $75,000 on the principal. The mortgagee cannot now be placed in the position which it was induced to relinquish upon payment of the interest. It ought not to be compelled to make restitution after its position has been changed to its detriment, and it cannot be restored to its former favorable position.

We distinguish Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599, on three grounds:

(1) Section 77B was not enacted until nearly two years after the receivership proceedings were instituted. It was not until this amendment was enacted that reorganization could occur in a court of bankruptcy. Before that date, bankruptcy meant liquidation. It was shortly after this amendment was enacted that the involuntary petition was filed under section 77B. It is as permanent trustee in bankruptcy under section 77B that appellee instituted the proceedings which resulted in the orders from which these appeals were taken.

In reaching our conclusion under this subdivision, we assume the following propositions:

(a) Upon adjudication in bankruptcy under the old act all the property of bankrupt vested in the trustee as of the *date* of the *filing* of the petition. (b) Upon adjudication in bankruptcy under section 77B all of the property of the bankrupt vested in the trustee as of the date "when the debtor's petition or answer was approved." [1] (c) Before the petition in bankruptcy was filed, administrative orders were matters wholly within the control of the court of equity. Upon the filing of the petition in bankruptcy, as a general proposition, it may be said the power of the equity court ceased. Its jurisdiction was superseded by that of the court of bankruptcy. (d) The orders of the equity court having been made before the petition under section 77B was filed and before section 77B was enacted, the equity court had authority, as against the trustee in bankruptcy named under petition filed pursuant to section 77B, to make and enter the administrative orders in question. (e) In the Taylor Case the conflict of jurisdiction was between a state court of equity and a Federal court of bankruptcy. The instant contest presents a conflict between the jurisdiction of the United States District Court sitting in equity and the jurisdiction of the same United States District Court sitting as a court of bankruptcy. Judges of the same division presided over the two courts. The judge, who presided in the equity suit, knew what was best for the creditors and that liquidation through

[1] Subsection (*o*) of section 77B (11 U.S. C.A. § 207 (*o*)) provides:

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved."

bankruptcy was not desirable if reorganization in equity could be accomplished.

In reaching the conclusion that the court of equity's jurisdiction over the property in receivership was not lost, so far as a trustee appointed under section 77B was concerned, until "debtor's petition or answer was approved" in said 77B proceedings, notwithstanding there had been filed and was pending a petition for an adjudication in bankruptcy (or an adjudication in bankruptcy under the old act), we wish to make it clear we are not passing upon the effect of said pending or intermediary petition upon preferences made within four months of the filing of the first petition in bankruptcy. We are confronted by a conflict of jurisdiction between two courts. We are passing on that question only. We hold that between them the court of equity had jurisdiction to make and enter administrative orders affecting the property in receivership until the debtor's petition or answer in 77B proceedings was approved.

(2) Even though the jurisdiction of a court of bankruptcy excluded that of a court of equity, the latter's order will not be repudiated save where equity and justice are promoted thereby. Exclusive jurisdiction of one court does not necessitate the court acquiring jurisdiction setting aside all orders of the other court which were made in good faith and in fairness and for the protection of creditors.

It conclusively appears that the court of equity entered the orders in controversy in good faith, for the protection of the debtor and its creditors, and upon the sanction, or at least with no opposition from either creditors or debtor, and in the good faith belief that the payment of the installments of interest would prevent the mortgagee from declaring a default which would, or at least might, result in the loss of possession of debtor's property to the ultimate damage of the unsecured creditors. Such an order was wisely made at the time of its entry, and the court of bankruptcy should, performing as a court of equity and in an effort to reorganize the debtor for the benefit of creditors, ratify such orders of the court of equity.

Courts of bankruptcy, especially after the enactment of section 77B, are courts of equity and as such should be courts of conscience. They should not enter decrees which are contrary to equity and good conscience. The first lien creditor, who obtained the payment of interest upon its indebtedness, pursuant to a direction of a court of equity which made its order in good faith upon the request of the parties and in the belief that its jurisdiction was clear, should not be made to return the interest after the adjudication in bankruptcy has occurred, where it appears that said creditor, as a consideration of its receiving the interest due it, waived its right to insist upon default—because of the nonpayment of the principal—and to demand possession of property which was productive, for the reason, if for no other, that the said court of bankruptcy cannot place said creditor in the same position as it held when interest was paid and maturity of principal installment payments postponed.

The sound and equitable reasons for the existence of the doctrine of estoppel should influence courts and officers of courts as well as individuals. A court of bankruptcy being a court of equity acting under section 77B should be influenced by the reasons back of the rules upon which both laches and estoppel rest. The creditors who filed petitions in bankruptcy and who were the indirect beneficiaries of the orders in the equity suit and who waited two years without pressing the adjudication in bankruptcy were guilty of laches so as to preclude them from recovering the moneys previously directed to be paid by the court of equity. The permanent trustee under 77B proceedings should have no greater rights than the creditors whom he represents.

(3) There is, and should be, an exception to the rule which denies to a court of equity which properly acquired jurisdiction of the res and the property of the debtor, a right to proceed after a petition in bankruptcy has been filed. Such exception extends to the protection of perishable property, to the insurance of property against fire, and to other matters which of necessity must be met by the receiver, who cannot and does not, until adjudication occurs, know whether the involuntary petition in bankruptcy will be pressed to a hearing. Where the hearing on the petition is long delayed as here, and there is danger of losing the property through default in the payment of interest and principal upon the mortgage indebtedness, a court of equity, we think, may entertain jurisdiction to enter orders which have for their purpose the avoidance of

default in a mortgage on debtor's property, when the creditor as a consideration of the interest payment, waives its right to insist upon a default.

■ Of course, this power must be exercised by the court of equity with great caution. It should not be stretched. The utmost good faith must attend the action of the receiver in the equity proceedings. Notice to creditors must be given and they must be given an opportunity to be heard. If the court of bankruptcy is proceeding diligently and it appears likely that an adjudication or dismissal will shortly occur, the court of equity should be even more hesitant to act. It may well decline to make any orders of an administrative nature. But, if the jurisdiction of the court of bankruptcy is invoked and no adjudication follows although months elapse, we think the court of equity may and should act, and its action should not ordinarily be disturbed, except by appeal. Where third parties' rights have intervened, they approach, if they do not attain, the status of invulnerability.

While this decision might well rest upon reasons (1) and (2), the frequency with which similar questions have and may arise in this circuit since the passage of section 77B justifies a study of the decisions to ascertain whether the conclusions announced have the support of judicial precedent.

The leading case is that of In re Gochenour (C.C.A.) 64 F.(2d) 500, 501. The facts are so similar and Judge Manton's decision so persuasive and pertinent that our study of the cases might end here. We quote only briefly from the opinion:

"Unless it is clearly beyond the court's jurisdiction to have continued the equity receivers in possession of the property pending the election of the trustee, writs should not issue. In a conflict of jurisdiction, bankruptcy is paramount and will prevail, and the bankruptcy receiver will likewise prevail over an equity receiver. * * But here no bankruptcy receiver was appointed nor sought in either the involuntary or voluntary petition. The equity receivers are asserting no rights adverse to bankruptcy jurisdiction. Bankruptcy jurisdiction, paramount though it be, is not so exclusive that the appointed equity receivers, who are now in possession of the property aiding the bankruptcy court, may be held to be doing so unlawfully. Where receivership precedes bankruptcy, the courts have shown a willingness to permit the receivership to continue to aid the administration of the estate. In re Hudson River Elec. Power Co. (D.C.) 173 F. 934; In re Ellsworth Co. (D.C.) 173 F. 699; Woolford v. Diamond State Steel Co. (D. C.) 138 F. 582. Permitting such receivers to continue seems from this record to be for the good of the estate."

In Jones v. Springer, 226 U.S. 148, 33 S.Ct. 64, 65, 57 L.Ed. 161, the court was dealing with perishable property seized under an attachment within four months of bankruptcy. The state court was ignorant of the bankruptcy proceeding when it sold the property which had been attached. The Supreme Court said:

"The main ground of the appeal is that by § 70 of the Bankruptcy Act [11 U.S.C.A. § 110] the title of the trustee related back to the date of the adjudication of bankruptcy, and that, as matter of law, Springer could not be a bona fide purchaser. * * * It is argued that filing the petition in bankruptcy was a caveat to all the world * * * and that the above proviso can have effect only when the judgment and sale took place before the petition was filed. * * * The proceeding * * * [was] simply an order made on a finding that, in the language of the * * * statute, 'the interests of both plaintiff and defendant will be promoted by the sale of the property.' * * * It is true that the estate is regarded as in custodia legis from the date of the petition, as against a subsequent attachment. Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 306, 307, 32 S.Ct. 96, 56 L.Ed. 208, 213. But in a case like the present, where, under an attachment levied before the petition was filed, the property had been put into the hands of a receiver, without notice of the petition, it is not true that all power and jurisdiction of the local court were ended before notice of the bankruptcy proceedings. * * *

"There is a necessity for immediate action and no one is ready to act. If the local court, in its ignorance, directs a sale and the purchaser is chargeable with notice that there may be somewhere a petition filed that will destroy his title, the doubt affects the price that he will give, and if the sale turns out effective, the goods have been sacrificed. The very reason of the rule that permits a good title to be given by an authority that has none contradicts the limitation supposed. We are of opinion that the power of the territorial court

remained. 'For necessity (which is excepted out of the law) the sale in that case is good.' * * * The proceeding is in rem, against all the world, the sale stands, and the claim of the trustee is transferred to the proceeds, which ordinarily must be presumed to represent the fair value of the goods and take their place."

This court had a somewhat similar question in, In Re Insull Utility Investments, 74 F.(2d) 510, 513. There we said:

"Both proceedings were before the same judge, and no objection was raised by anyone. If there had been, the error, no doubt, would have been immediately corrected by permitting the first receiver to continue in possession or by showing a necessity for the appointment of the second, for at no time was there a clash of jurisdiction. * * * He [Fentress] did precisely the same work in the bankruptcy receivership that he would have done in the equity receivership had it continued. No one questioned * * * the necessity of his services. * * * Certainly the bankruptcy court which operates on equitable principles should not be heard to say under these circumstances that Fentress should lose the value of his services on the ground that they were not necessary, merely because of the court's oversight in making the appointment. Especially should this not be done where, as here, there was no objection made, and the question was raised for the first time after appellant filed his brief in this court."

In Connell v. Walker, 291 U.S. 1, 54 S.Ct. 257, 258, 78 L.Ed. 613, the court dealt with the effect of the bankruptcy proceedings upon the suit, to which the bankrupt was a party, already pending in a nonbankruptcy court. The court said:

"Bankruptcy proceedings do not, merely by virtue of their maintenance, terminate an action already pending in a nonbankruptcy court, to which the bankrupt is a party. * * * This is obviously the case where the suit like the present one is brought by a creditor to set aside a fraudulent conveyance of the bankrupt, made more than four months before the petition in bankruptcy. The right asserted is one given the creditor by state law which the Bankruptcy Act withdraws from him only upon the election of the trustee to assert the rights of the creditor, as he is privileged to do by section 70e, 11 U.S.C.A. § 110 (e), an election, which, in this case, does not appear to have been made. * *

The question remains whether, the trustee having failed to assert any rights with respect to the pending action, the state court was required to stay it by any provision or necessary implication of the Bankruptcy Act. * * * The authority given by that section to stay pending suits after adjudication, which has taken place here, is not mandatory, but permissive, to be exercised in the sound discretion of the court. There is no suggestion that there was any abuse of discretion by the state court in refusing to stay its hand on the bare showing by the fraudulent bankrupt that there had been an adjudication in bankruptcy. * * * On the other hand, if section 11a [11 U.S.C.A. § 29 (a)] does not apply, but if it be assumed that the general scheme of the Act implies some duty of the state court to preserve the estate until opportunity is given the bankruptcy court to assert its jurisdiction, see Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 308, 32 S.Ct. 96, 56 L.Ed. 208; In re Moore (D.C.) 42 F.(2d) 475, 478, still the petitioners have failed to show that there has been no such opportunity."

In re E. H. Walsh (C.C.A.) 295 F. 504, is referred to in the Gochenour Case and quotations therefrom, as well as from In re Oakland Lumber Company (C.C.A.) 174 F. 634, are omitted. See, also, In re Moore (D.C.) 42 F.(2d) 475.

In Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457, the court held that jurisdiction of the Federal court [(D. C.) 13 F.(2d) 617] was invoked through the practice of fraud by the moving litigant and therefore must be surrendered. The Supreme Court ordered the Federal District Court to turn over the property to the state court receiver. Nevertheless, the administrative orders entered in the Federal court, and they were many and involved large sums of money, were all approved.

We recognize the dangers of abuse lurking in a doctrine which sustains the validity and efficacy of orders of a court which has been divested of its jurisdiction, or which has at best a sort of a de facto jurisdiction. Only necessity of action or action taken at the instance of creditors, or with their acquiescence and for their benefit, can justify such orders. We are convinced, however, that the court's duty to act in situations where necessity demands action, or wherein it is apparent that the pending bankruptcy proceedings were instituted to maintain the status quo

and are not to be pushed to adjudication unless the contemplated plans of reorganization are unrealizable, is clear notwithstanding the existence of dangers.

We recognize that the field wherein the court of equity may act is a narrow and an insufficiently defined one, and over-stepping the lines which mark the court's jurisdiction is fraught with grave and disastrous consequences; yet the duty is present. There exists no justification for non-action simply because the performance of the duty is difficult. In numerous fields of legal activity the lawful course may be a difficult one to follow, but pursue it, we must.

The decree is reversed with direction to deny the petition of appellee.