**In re 188 WEST RANDOLPH STREET BLDG. CORPORATION.***

**KRENSKY v. WOLFE.**

Nos. 5855, 5882, 5864, 5883.

Circuit Court of Appeals, Seventh Circuit.
Jan. 20, 1937.

*Writ of certiorari denied 57 S.Ct. 785, 81 L.Ed. ——.

Irwin T. Gilruth, Joseph Z. Willner, and Alfred Beck, all of Chicago, Ill., for appellee Wolfe.

Taylor, Miller, Busch & Boyden, of Chicago, Ill., for appellees Hamilton Allport, George H. Arnold, Francis M. Brooke, and R. P. Mattiessen.

Harry A. Biossat and E. S. Greenwald, both of Chicago, Ill., for appellees Emma Swanson, Charles F. Kuhlow, Augusta Lusth, John B. Smoot, Ruth Dolan and Wise & Smoot, Inc.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

EVANS, Circuit Judge.

The appellant, who is a receiver appointed in a state court foreclosure suit, attacks two orders entered by the District Court. The first refused him leave to appear specially and contest the jurisdiction of the court, and also refused him leave to file petition for return of the real estate, known as the Steuben property, previously turned over to the trustee under order of the District Court. The second order directed him to turn over $26,731.47 which he had collected as rents from the premises while he was in possession as receiver.

We have four appeals before us because of the allowance by both the District Court and the Circuit Court of Appeals of appeals from each of the two orders. The allowance by this court was made without prejudice to renewal of objections to such allowance on the final hearing. Appeals Nos. 5864 and 5883 are from the order of April 3, 1936, summarily ordering the turn over of the $26,731.47 rents held by the state court receiver. He was also directed to file an account of all his receipts and disbursements during said receivership. Appeals Nos. 5855 and 5882 are from the order of March 24, 1936, denying appellant leave to file special appearance or leave to file petition for reclamation of the real property.

BRIGGLE, District Judge, dissenting in part.

———◆———

John L. McInerney, Louis M. Mantynband, and Sidney R. Zatz, all of Chicago, Ill., for appellant.

The following chronological table will supply the background of this appeal.

March 1, 1928, trust deed on building executed.

March 25, 1930, Westinghouse Co. filed bill in state court to foreclose mechanic's lien on Steuben Building.

November 24, 1930, First Union Co., trustee under trust deed, filed cross bill to foreclose, in the mechanic's lien suit.

January 7, 1931, Receiver in state court appointed (appellant).

June 24, 1932, decree dissolving debtor corporation.

June 6, 1933, involuntary petition under old bankruptcy act.

July 29, 1933, adjudication in bankruptcy.

September 13, 1933, Klein appointed trustee under old bankruptcy act.

August 8, 1935, involuntary petition under 77B.

December 30, 1935, petition in 77B approved and Wolfe (appellee) temporary trustee (since evidently appointed permanent trustee).

January 6, 1936, Steuben Building turned over by receiver to trustee under order of District Court.

March 11, 1936, Receiver authorized by state court to take appropriate action in Federal court and to retake possession of building (after Supreme Court decisions) and was orally instructed not to turn over rents.

March 17, 1936, temporary trustee filed petition on which orders appealed from were made.

March 24, 1936, order appealed from in Nos. 5855 and 5882, denying leave to file special appearance or to petition for return of premises.

April 3, 1936, order directing turn over of rents still held by state court receiver. ·

The jurisdiction of a District Court in which 77B proceedings are pending is involved in all appeals. Appellant denies to a court of bankruptcy any authority to direct a receiver appointed long before in a state court foreclosure suit to turn over moneys collected as rents from real estate by him possessed as said receiver. He also insists on his right as such receiver to an order from the court of bankruptcy directing the trustee to turn back the property which was by him surrendered to the trustee. He further argues that a court of bankruptcy may not, against his objection, try such right to possession of the money in a summary proceeding. He also argues that comity requires that the trustee apply to the state court for a turnover order before he applies to the court of bankruptcy; also that, as state court receiver, appellant's right to file a petition of intervention to protect his property is not a matter of discretion on the part of the District Court but is an absolute right on the part of the receiver. As a final contention he asserts that as receiver of the state court he had no authority to turn over the property in his possession without his court's permission, which was never given, and he is now threatened on his bond and in his brief he states he may be punished for contempt by Judge Rush, the state judge, if he turns the moneys over to the trustee, as directed by one of the orders from which two of the instant appeals are taken.

Appellant relies upon two recent decisions of the Supreme Court, Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, and Tuttle v. Harris, 297 U.S. 225, 56 S.Ct. 416, 80 L. Ed. 654, while appellee seeks to distinguish both cases and at the same time asserts that section 77B, Bankr.Act, as amended, 11 U.S. C.A. § 207, was intended to enlarge the powers of a court of bankruptcy and that possession of the Steuben Building property is indispensable to a successful plan of reorganization. Appellee also asserts that the vast majority of the creditors, including bondholders, desire the consummation of the plan of reorganization under consideration in the court of bankruptcy. Representatives of the bondholders' committee sustained appellee in this latter statement.

Counsel for appellant errs in assuming that the Duparquet and Tuttle cases govern. This is not a case where a trustee in bankruptcy is seeking to obtain possession of real estate in the hands of a receiver appointed by a state court in a foreclosure suit, but is a case where such receiver surrendered the real estate to a trustee in bankruptcy who has for a considerable period of time managed the property and has submitted a plan of reorganization for the creditors with the cooperation of the bondholders under the mortgage which is being foreclosed in the state court. We have a case then where an order was made in the due exercise of the court of bankruptcy's jurisdiction. It was an administrative order by a court of bankruptcy having jurisdiction of the estate of an insolvent debtor. The appellant who was the receiver in the state court and who was in possession of the real estate acquiesced in the turn over order made in the court of bankruptcy. He did not appeal, but delivered possession to said trustee, and the trustee has since continued to collect rents and look after the building. Time for appeal from said turn over order has long since expired. The trustee and all the parties to the bankruptcy proceedings have acted upon the assumption that the appellant acquiesced in

and consented to the terms of the District Court's order and voluntarily and willingly turned over the said property to the appellee. Moneys have been expended by the appellee and services rendered in an effort to satisfactorily reorganize the debtor. All this was on the assumption that the receiver acquiesced and was willing to cooperate in a reorganization which would promote the interests of all creditors. Appellant should be, and is, estopped from now asserting that which was contrary to the fact implications of his acts in thus delivering the property to the trustee.

In fact, there may well have been more than mere consent to an order of the District Court. Appellant was the receiver of a state court of equity only because of a foreclosure suit which was brought by a trustee named in a mortgage. Both trustee and receiver, however, owed a duty to truly represent the interest of bondholders. When bondholders are blocked in their plan of reorganization by a wilful minority activated by mercenary motives they may, we assume, seek relief elsewhere and in ways other than by the mortgage foreclosure suit. The vast majority of bondholders so situated are usually seeking nothing but a fair and equitable plan of reorganization. Unfortunately in some instances this laudable object is not attainable, in a court where the wilful minority may block all proceedings. Compliance then by the receiver with an order of the District Court to turn over the property to the trustee, when supported by the wishes of a majority of the creditors, may well have been most welcome for a much desired result was thereby made possible, namely, the consummation of the plans of the vast majority of the bondholders for an equitable reorganization. At any rate, the receiver would not have been chargeable with neglect for failure to appeal from said order.

It is therefore apparent that the question before us is not the validity of the order which directed the transfer of the property. It is this—May a receiver after he has transferred the property at the request of, or with the approval of the bondholders, and upon order of the court of bankruptcy, and after the trustee has incurred expenses on the assumption that such transfer was voluntary, repudiate such action? Our answer must be in the negative.

This disposition of the appeals from the first order, we think, also necessitates a similar disposition of the appeals from the second order. There was less reason for withholding the money from the trustee after the real estate was turned over to him than there was for withholding the real estate in the first instance. The appellant, having estopped himself to assert a right to possession of the real estate, cannot assert a title to the personal property (the rents collected from the real estate) as against the trustee, representing the bondholders whose action brought him into existence.

In disposing of the rights of the parties, the court cannot overlook the fiduciary position which a trustee named in a mortgage or a receiver appointed in a foreclosure suit or a trustee in bankruptcy, occupies. All are positions of trust. They are, broadly speaking, trustees for the creditors—in this case the bondholders. The bondholders are the receiver's *cestuis que trust*. The receiver's right to fees incident to receivership should not rise to a position higher than the right of bondholders to demand protection of their interest by the trustee. The fiduciary relation that exists calls for good faith administration of a trust by either receiver or trustee. Good faith, while a general term, with a somewhat elastic meaning, in the instant case is evidenced by conduct promotive of the bondholders' interest. The heart of good faith is loyalty to the cause, and protection of the interest of bondholders. Action by the receiver contrary to the wishes and best interests of the vast majority of the bondholders is incompatible with good faith.

It is for this reason that the utmost care should be exercised by the District Court in passing favorably on a debtor's (or creditor's) petition for adjudication.

When the debtor's estate is in possession of a receiver in a court of equity, state or Federal, the court of bankruptcy must not become the instrumentality whereby a wilful minority or a small group seeks to establish a nuisance value. (The foregoing observations have no special application to the action of counsel or trustee in this case but refer to situations which have arisen frequently.) Since the decision of the Supreme Court in Tennessee Publishing Company v. American National Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. ——, (November 9, 1936), the courts of bankruptcy have a most satisfactory definition of good faith to support them in their rulings upon a petition of creditors such as has just been alluded to.

Where a controversy is limited to a legal question between a state court receiv-

er and a trustee in bankruptcy over the right to possession of real estate in the possession of the receiver, the District Court may act in a summary proceeding. Taylor v. Sternberg, 293 U.S. 470, 473, 55 S.Ct. 260, 79 L.Ed. 599. The real controversy is not over procedural questions but whether the trustee is entitled to possession through any proceeding.

■ With the contention that the District Court should have directed the trustee in bankruptcy to apply to the state court for an order directing its receiver to transfer the assets to the said trustee, and only in case of that court's improper refusal so to do, to apply to the Federal court for a turn over order, we entirely agree. The trustee in bankruptcy should be directed to petition the state court for an order directing its receiver to turn over the property to the trustee appointed by the Federal court before applying to the Federal court for a similar order. In Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 606, 77 L. Ed. 1243, 90 A.L.R. 1215, the court said:

"Upon adjudication of bankruptcy, title to all the property of the bankrupt, whereever situated, vests in the trustee as of the date of filing the petition in bankruptcy. The bankruptcy court has exclusive jurisdiction, and that court's possession and control of the estate cannot be affected by proceedings in other courts, state or federal. Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 737, 51 S.Ct. 270, 75 L.Ed. 645, and cases cited. Such jurisdiction having attached, control of the administration of the estate cannot be surrendered even by the court itself. Id. Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 739, 51 S.Ct. 270, 75 L.Ed. 645. 'The filing of the petition is a caveat to all the world and in effect an attachment and injunction.' May v. Henderson, 268 U.S. 111, 117, 45 S.Ct. 456, 459, 69 L.Ed. 870, and citations. And see generally Moore v. Scott (C.C.A.) 55 F.(2d) 863; In re Diamond's Estate (C.C.A.) 259 F. 70. * * *

"Nevertheless, due regard for comity— which means, in this connection, no more than judicial courtesy between the courts undertaking to deal with the same matter— would suggest that ordinarily the trustee in bankruptcy might well be instructed by the bankruptcy court, before taking final action, to request the state court to recognize the exclusive jurisdiction of the former and set aside any orders already made conflicting therewith, as was done with good results in the case of In re Diamond's Estate, su- pra (C.C.A.) 259 F. 70, 72, 75. In the present case, however, such a course would probably have been futile, in view of the fixed attitude of the state courts on the subject."

■ It is not a case of two courts of coordinate jurisdiction of the same cause, it is true. The jurisdiction of a court of bankruptcy supersedes that of the state court if the facts warrant a turn over order. This is so because of the Federal Constitution and the Acts of Congress enacted pursuant thereto. The fact that the Federal Court's jurisdiction is exclusive, however, affords no justification for that court's failure to comply with the rules of comity which tend to promote the cooperative efforts of both courts to secure for the creditors the greatest relief possible, which must be the goal of both courts. Both courts are but instrumentalities of service. In some instances the best service can be rendered in the court where the foreclosure of the mortgage is in process. In other instances, because of the limited powers of the court of equity compared to those exercisable by a court of bankruptcy, a minority may defeat the plan of the majority to equitably and fairly refinance and reorganize the mortgaged property, in which situation the court of bankruptcy is the more effective forum. It is plain, therefore, that both courts should resist and resent the use of either by a wilful few to misuse a power which grows out of the ownership of bonds. Likewise, they should resist any action on the part of the majority which will freeze out the rights of a minority unable financially to protect their interests. No less inexcusable than action by the wilful few to create a nuisance value is the action of a trustee named in a mortgage or a receiver appointed by a court (state or Federal) who insists on expensive litigation.

What has been said, of course, does not leave in doubt or uncertainty the jurisdiction of the court of bankruptcy once that court finds present the facts upon which its jurisdiction rests and makes an order of adjudication. As stated by the Court in the opinion from which quotation is taken, the jurisdiction of the court of bankruptcy after adjudication, is exclusive and supersedes that of a court of equity in possession of the *res* of the debtor. The court of bankruptcy cannot surrender its jurisdiction or its duties. Desire to avoid conflict cannot control and should not influence its action.

■ It is for this reason that courts of bankruptcy should carefully consider the

petitions of creditors (and debtors) before taking jurisdiction. After jurisdiction is acquired they cannot compromise matters of jurisdiction which are exclusively theirs. And while comity suggests that the courts of bankruptcy should, through the proper appointed agencies, usually the trustee, petition for turn over orders in the state court, such trustees or other court of bankruptcy representatives are under no statutory obligation so to do nor is their right to possession dependent upon an order from the court of equity (state or Federal). The rule of comity here favored is one of courtesy which we believe will be promotive of good will and cooperation.

In the instant case, we cannot see what purpose will be advanced by the receiver's holding the cash received from the rents of this real estate from the bondholders who are endeavoring to reorganize the debtor under section 77B other than that his fees as receiver and his attorneys' bill for compensation will be determined by the state judge instead of the court of bankruptcy. It is plain that such withholding of the cash may cripple the efforts of the bondholders in their reorganization plans. It is quite intolerable for a receiver to allow his receiver's perquisites to conflict with or influence action inimical to the interest of the creditors, who brought about his appointment.

■ The application addressed to the District Court for a turn over order of the cash on hand presents two questions, one of law and one of discretion. As to the legal question we have no doubt but that the court of bankruptcy in this case had the authority to compel one who collected money belonging to the debtor while said debtor was insolvent, to turn over the same to the trustee and to do so in a summary proceeding. We see no reason for making an exception because it was a receiver in a foreclosure suit who held the cash. Added reason exists in favor of the validity of such an order as against such a receiver from the fact that the real estate has been turned over by the receiver appointed in the foreclosure suit to the trustee and the creditors in the court of bankruptcy have proceeded to formulate a plan of reorganization. If the receiver by this action has precluded his repossession of the real property the same reason estops him from now withholding the personal property. The citation of Duparquet v. Evans in support of the error assigned in respect to the order directing the delivery of cash calls

for no lengthy discussion. Only one question was before the court in that case. It was the definition of an "equity receivership." The court was elaborating its reasons in support of its conclusion that a receiver appointed in a foreclosure of a mortgage suit was not such an "equity receivership" as was referred to in section 77B (a) of the Bankruptcy Act. There was no consideration of the effect of an estoppel following the transfer of the mortgaged real property by a receiver appointed in the foreclosure suit, to the trustee named in the bankruptcy proceedings, which is our question.

Equally well satisfied are we with the court's exercise of its discretionary power. No argument has been advanced in favor of permitting the receiver appointed in the foreclosure suit to hold rents after the real estate has been turned over to the trustee appointed under section 77B. Strong reasons support the transfer of this money to those to whom it belongs and who are engaged in effectuating an equitable reorganization plan.

■ The receiver advances as his final reason for refusing to turn over the money the asserted order of the state judge who he says threatens to hold him on his bond and he fears contempt proceedings if he complies with the order of the district court. The rights of the parties cannot be made to depend upon any such frivolous grounds.

The orders are affirmed.

BRIGGLE, District Judge (dissenting in part).

I concur in the opinion of the court in so far as it denies appellant the right to repossess the real estate which had previously been relinquished to the trustee in bankruptcy. No appeal was taken from the order of the District Court dealing with such property, and appellant is not now in a position to complain.

I do not concur in that portion of the opinion holding that appellant must deliver to the trustee in bankruptcy certain funds in his hands. These funds came into his hands as receiver of the state court, appointed in a foreclosure proceeding more than two years before bankruptcy intervened, and I deem the order directing their turnover and an accounting to the bankruptcy court in conflict with the holding of the Supreme Court in Duparquet H. & M. Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591.