### In re PARK BEACH HOTEL BLDG. CORPORATION.

### PANCOE v. SOUTHMAN.

Nos. 6132, 6425.

Circuit Court of Appeals, Seventh Circuit.

April 28, 1938.

Rehearing Denied June 13, 1938.

---

"Ans. No.

"Ans. No.

David T. Alexander and Gilbert F. Wagner, both of Chicago, Ill., for appellant.

Joseph Z. Willner, of Chicago, Ill., for appellee Bondholders' Protective Committee.

Walter H. Eckert, of Chicago, Ill., for appellee permanent trustee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellant, receiver in a state court proceeding, seeks a reversal of an order entered in the District Court in course of administration under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 and note, wherein the court decreed that the receiver's petition for additional compensation be denied; that within a certain period he pay to the trustee certain sums; and that his final report and account be denied approval until such sums should be paid.

Foreclosure of a mortgage upon debtor's property, consisting of an apartment building, was instituted in 1931 and still pending in the state court without final disposition when certain of the bondholders filed in the District Court, on May 22, 1935, their petition for reorganization. The debtor entered its appearance, admitted the averments of the petition, and consented that the relief prayed should be granted. On July 26 the court approved the petition and appointed a temporary trustee, making the appointment permanent on August 22, 1935. On February 7, 1936, a plan of reorganization was approved. Following this, all proceedings necessary for the promulgation and completion of the plan were completed. A final decree was entered finding the plan of reorganization to have been completed, the securities distributed, and previously existing mortgages and liens released. No appeal has been taken from any of the orders entered other than that here involved.

Following appointment of the temporary trustee, appellant, who had been acting as receiver in the state court proceeding, surrendered possession of the real estate to the trustee. Thereafter on October 11, 1935, he filed his petition in the District Court, reporting that he had held possession of the property from February 28, 1934, to July 5, 1935, and that on the 10th day of September, 1935, he had caused to be filed in the state court his final account and report and that that court had approved his report, including an allowance to him for additional compensation for services rendered. He further reported that certain claims against him as receiver remained unpaid and prayed that the court direct the trustee to pay him the additional fees allowed by the state court, prior to payment of the claims of all other creditors, and that the unpaid claims due be allowed as costs of administration. On November 27, 1935 the bondholders' committee filed a petition praying for an order upon appellant to file an account and report of all his acts during the receivership. The court directed appellant to file within five days a full and complete report and account of all receipts and disbursements and a full report of all his acts as such receiver and ordered that the trustee and all parties in interest might object thereto within ten days thereafter. On November 29, 1935, the court directed to be impounded all books, vouchers, checks, files and other records that day surrendered by appellant; named auditors to examine the books and directed that an auditor for appellant be permitted to be present at such examination.

On December 21 the court referred to one of the referees as special master the inquiry and investigation as to appellant's acts, directing the master to proceed with the investigation and inquiry into "all matters and things relating to said receivership and the accounts, actions and disbursements" of appellant, and relating to "all matters touching the account and accounts of the said receivership, and any and all matters touching on the method of handling the accounts and moneys belonging to the said estate, and any and all other transactions, items, and accounts that * * * might affect the said receivership transactions, and each of them." The court directed that the investigation should "in no way be limited," but that it should "include a complete investigation of the books, records, papers and effects" of appellant.

On August 26, 1936, the special master filed his report, in which he found that appellant, in violation of his duty at common law and under the rules of the state court, had commingled the income of the debtor with funds of many other trust estates and of privately owned property, had kept confused and misleading books of accounts relating to all estates and properties and

no bank accounts and had transferred various estate funds to a safety deposit box, held in the name of his wife, to which his son had access.

He concluded that a receiver who so conducted his affairs should be charged with the expense and cost of the proceedings necessitated by his actions and compelled to return fees received by him and that appellant was, therefore, indebted to the estate for the following sums: Fees allowed and received, subsequent to approval of the petition in federal court, $700; court reporter's fees, necessitated by the hearing, $564.75; cost of the audit of appellant's books, $991.60; and such fees to the attorneys and special master as should be allowed by the court; and recommended a decree for such relief.

The master reported that in the course of his administration as receiver, appellant had switched the laundry service from a company charging 2½ cents per pound to one charging 4 cents per pound. Appellant claimed that the change was made on account of his suspicion that the first company was using caustic soda, but the evidence shows that this suspicion was not well founded. Attorney fees allowed to the receiver's attorney in the state court were assigned to one Frank, a nephew by marriage of appellant, and Frank made a profit of $100 thereon. The master reported that the record abounded with accusations and suspicions concerning appellant's administration. He said that many of the transactions were of doubtful character and that no fiduciary who became involved in such manner could reasonably expect to escape criticism. He commented that business dealings between a receiver and his relatives, friends, or political associates may be predicated upon an intent to serve the estate in the most efficient manner possible, yet that, human nature being what it is, third persons could hardly avoid suspicion as to the ultimate destination of the profits; but he concluded that the committee, which produced the evidence, had failed to establish, by a preponderance of the evidence, misappropriation.

He added, however, that it did not follow that the administration of the receivership should meet with full approval. He pointed out that appellant was dealing with a trust fund; that it was his duty to keep this separate from his own and other funds; that his failure might have been due to ignorance or to a well-conceived plan for the spoliation of his trust. The master was of the opinion that the administration should be severely censured and that appellant should be disciplined by imposing upon him all costs necessarily incurred in the proceedings and by compelling him to refund all fees obtained by him as receiver over which the District Court might have jurisdiction. He pointed out that payments aggregating $700 were made after the federal court acquired jurisdiction; that at that time appellant had no right of control (or authority) over the funds of the estate; and that by such withdrawal he had, at least technically, committed a conversion.

Objections and exceptions to the report were filed by both appellant and the bondholders' committee, the latter insisting that the master should have found actual misapplication of funds.

On October 6, 1936, the attorney for the bondholders' committee filed his petition setting out in detail the services rendered at the hearing before the special master in connection with the accounting and praying for an allowance of $1,750.

Upon hearing the master's report and exceptions thereto and the petition for fees, the judge announced that he had examined the testimony; that he could not reconcile the receiver's conduct with honesty of purpose, but that all doubtful points he would resolve in favor of the receiver; that what the latter paid on account of his own services and those of his attorney on allowances by the state court, made after the filing of the bankruptcy proceedings, should be returned; that the receiver had so kept his accounts and so commingled the funds of various estates, as to necessitate the investigation and consequent expenditure of money in order to determine the correct status; and that he should be charged with all the cost thereof. The judge allowed counsel for the bondholders' committee $1,000 for services in connection with the hearing; the special master $300 and $100 expenses and the auditors $991.60 and ordered the receiver to pay all of said sums together with court reporter's fees, $700 paid by receiver to himself and $300 to his attorney, after notice of the reorganization proceedings, to the trustee within ten days.

Appellant contends that the court was wholly without jurisdiction of the subject matter; that the debtor could not have committed an act of bankruptcy and was wholly without title to property which could be administered under the Bankruptcy Act;

that the court had no right to proceed summarily against the receiver and to tax him with costs and expense incurred in the hearing before the special master; that various items of costs and expenses were not proved; and that the fees ordered returned were paid in pursuance of a state court order and, therefore, could not be set aside.

Upon adjudication, all property of the bankrupt vests in the trustee as of the date of the filing of the petition. The bankruptcy jurisdiction and the court's possession and control of the estate in pursuance of the same, are paramount and exclusive and cannot be affected by proceedings in other courts, whether state or federal. Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599; Gross v. Irving Trust Company, 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215. It follows that a receiver of the bankrupt's property in a prior pending proceeding is subject to this paramount authority, for the result of bankruptcy is binding upon both the court appointing the receiver and the receiver as custodian of that court. With the filing of the petition for reorganization under the bankruptcy law and its approval the power of the state court ceased and the order fixing compensation of the receiver and his counsel entered thereafter was a nullity. Taylor v. Sternberg, supra.

From the moment the jurisdiction of the federal court attached, the estate in its entirety was held by the receiver as a mere repository for the bankruptcy court and, therefore, not adversely. The receiver, having erroneously deducted compensation after the attachment of such jurisdiction, was in no sense an adverse claimant. His claim was colorable only and subject to the summary power of the bankruptcy court, which had the power to require him to file an account, the correctness of which is of necessity subject to the summary jurisdiction of the bankruptcy court. Taylor v. Sternberg, supra.

The fact that the petition did not seek an adjudication but a reorganization in no wise limited the court's jurisdiction of the subject matter and its right to proceed summarily against all but adverse claimants, which attached upon the filing of the petition and its approval. Chicago Title & Trust Co. v. 7000 South Shore Drive Bldg. Corp., 7 Cir., 86 F.2d 499; In re Trustees System Discount Co., 7 Cir., 85 F.2d 467. Furthermore, section 77B

grants to the District Court express power to pass upon and determine allowances in prior administrative proceedings. The receiver, recognizing the court's jurisdiction, surrendered possession of the premises. Nobody questioned the court's custody and control of the assets and administration proceeded in the usual manner. Thereafter, as pointed out, the receiver was not an adverse holder and was subject to summary jurisdiction. In re 188 West Randolph Street Building Corporation, 7 Cir., 88 F.2d 257.

It is said, however, that under Duparquet H. & M. Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, inasmuch as the involuntary petition set up no act of bankruptcy but only a prior pending proceedings in a mortgage foreclosure, the court was without jurisdiction to entertain the proceedings and any order entered therein was void. The involuntary petition on its face recited a prior proceedings in the form of an equity receivership pending in the state court and invoked jurisdiction of the federal court upon that ground. From the order approving the petition no appeal was taken. All parties have acted upon the assumption that the court had jurisdiction. Possession has been surrendered by the state receiver and the reorganization has proceeded to a conclusion. The order was not void; it was at the most only erroneous. Where the court has jurisdiction of the subject matter but makes erroneous rulings during the course of the exercise of the jurisdiction, the only successful method of attack is by appeal. In such instances, by failure to appeal the parties waive questions of jurisdiction and by consent, waiver, or estoppel lose the right to object. In re 188 West Randolph Street Building Corporation, 7 Cir., 88 F.2d 257; In re 211 East Delaware Place Building Corporation, D.C., 14 F.Supp. 96; Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587. If the District Court was in error in finding that there was a prior pending equity receivership, that error could be corrected only by appeal. Furthermore, the answer of the debtor, consenting to the jurisdiction and agreeing that there should be a reorganization, removed any possible error, for a corporation may become a voluntary petitioner for relief either by an answer to pending involuntary proceedings or by original petition. Section 77B of the Bankruptcy Act.

■ Again it is said that the order approving the petition and all subsequent proceedings were void because, after the foreclosure proceedings had been instituted in the state court against the debtor, its charter was forfeited by the state of Illinois, for nonpayment of franchise taxes. In this connection the receiver relies upon Chicago Title & Trust Company v. 4136 Wilcox Building Corporation, 302 U.S. 120, 58 S.Ct. 125, 128, 82 L.Ed. ——. There the creditors attacked a voluntary petition under section 77B upon the ground that the debtor had no right to file the petition because its charter had been forfeited. This was a direct attack and the order affirming that taking jurisdiction was reviewed by the Supreme Court. That court held that such a debtor was without legal capacity to file voluntary proceedings for reorganization under section 77B. However, the court expressly limited its holding to a voluntary petition, saying that this court had relied upon its former decision in Re 211 East Delaware Place Building Corporation, supra, but that in that case the bankruptcy petition had been filed by creditors and not by a dissolved corporation and that, therefore, the capacity of the defunct corporation to institute proceeding was not there involved. Mr. Justice Sutherland said, "We express no opinion as to the correctness of this decision." For the present we adhere to our decision in Re 211 East Delaware Place Building Corporation, supra, and hold that the dissolution of the corporation did not rob creditors of their right to invoke liquidation or reorganization administration in bankruptcy. The case is strengthened by the fact that a liquidation proceeding was pending in the state court; that the charter was revoked subsequent to the institution of such proceeding and that the effect of the petition for reorganization was to remove the proceeding pending in the state court to the federal court in order to secure relief in bankruptcy. The power of the creditors to invoke their constitutional right to administration in the federal court instead of limiting themselves to the then pending proceedings was not destroyed by the charter forfeiture. Thus it is held in Illinois that whatever may be the effect of a decree of dissolution, a corporation may nevertheless be regarded as one de facto for the purpose of enabling creditors to reach its effects. Life Association of America v. Fassett, 102 Ill. 315.

■ Furthermore, there having been no appeal from the order taking jurisdiction and the proceedings having been prosecuted to a completion of reorganization, it is beyond the power of this court to review the order even though it were erroneous.

■ A complete answer to the receiver's assertion of lack of jurisdiction is found in his own acquiescence therein. Recognizing paramount jurisdiction in the bankruptcy court, he surrendered the premises without controversy. He even invoked exercise of jurisdiction by asking in his petition for additional compensation and for approval of his acts as receiver. He could not play both hot and cold with this question. He could not in one breath invoke the beneficence of the jurisdiction and in the other deny in toto its existence. Troxell v. Delaware, L. & W. R. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; Coburn v. Cedar Valley Land & Cattle Co., 138 U.S. 196, 11 S.Ct. 258, 34 L.Ed. 876; Nauvoo v. Ritter, 97 U.S. 389, 24 L.Ed. 1050.

■ Nor can any objection to the form of the proceedings, the presence or absence of formal pleadings defeat the power of the court; it acts summarily; it need have no pleadings before it, and any insufficiency in that respect cannot be urged as error in a reviewing court. Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419.

■ It is also insisted that the present proceeding should have been instituted by the trustee; but, as has been observed, the proceedings were summary and might have been initiated of the court's own motion. It is of no moment whether the initiative springs from the creditors or the trustee. The evidence shows that the trustee and his counsel participated and cooperated with the bondholders' committee and its counsel at the hearing, and we must assume from the fact that the court allowed the bondholders' committee to object to the correctness of the receiver's account and to be heard upon exceptions to the master's report, that it was a party in interest in the fullest sense of the word. We know of no reason why when such services have been rendered, having been necessitated by the act of the receiver, counsel for the committee should not be reimbursed.

■ We agree with the District Court that the receiver kept his accounts so commingled with the accounts of the various estates intrusted to his custody as to make it

necessary to expend time and money to discover the true status. If he had kept his accounts and conducted himself as receiver in the proper manner, the expenses would not have been incurred, for they were occasioned wholly by his misconduct and the order properly refused to approve his account.

It is objected that there was no evidence before the court as to the reasonableness of the claim for auditing. We have examined the record and fail to find any evidence to sustain the same. The same contention is urged as to the claim for attorney fees, but the record discloses proof of this claim under oath with detailed statement of services rendered, and shows that the claim was considered and determined at a hearing when appellant was present by counsel and made no request to be allowed to offer evidence to contest the reasonableness or unreasonableness of the same. Accordingly the latter contention must fail.

The portion of the order allowing the auditor's fee will be reversed, with directions to hear such evidence, if any, as may be submitted by the respective parties upon such claim. In all other respects it is affirmed.